**UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PAUL WATKINS, Individually and on behalf others similarly situated ) ) ) Plaintiff, ) ) -vs- ) ) FERRET DIVERSIFIED SERVICES ) INCORPORATED d/b/a FERRET ) BACKGROUND CHECK, ) ) Defendant. | Case No. **JURY DEMAND** |

**CLASS COMPLAINT**

Plaintiff Paul Watkins brings this class action to secure redress for alleged violations of the Fair Credit Reporting Act.

**Jurisdiction**

1. Paul Watkins brings this lawsuit pursuant to 15 U.S.C. § 1681 *et seq.*

2. This action presents a federal question and as such, jurisdiction arises under 28 U.S.C. §1331 and the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq* ("FCRA").

3. All the allegations and claims in this complaint stem from the publication of a consumer report concerning Paul Watkins, by Ferret Diversified Services Incorporated for employment purposes.

**Parties**

4. The Plaintiff, Paul Watkins, resides in Chicago, Illinois.

5. Paul Watkins is a consumer as defined by the FCRA 15 U.S.C. § 1681a(c).

6. The Defendant to this action is Ferret Diversified Services Incorporated ("Ferret Background Check") which is a "consumer reporting agency" as defined by the Fair Credit Reporting Act ("FCRA")15 U.S.C. § 1681a(f).

1

**General Allegations as to the Preparation and Delivery of Paul Watkins 's Consumer Report**

7. In 2010 Mr. Watkins sought employment with Select Remedy, a staffing agency that does business within the Chicago area.

8. As part of its ordinary and regular business practices, Select Remedy uses "background check" to determine the eligibility of applicants for employment.

9. Select Remedy requested that Mr. Watkins permit it to run a "background check" on him to determine him eligibility for employment.

10. Mr. Watkins consented to Select Remedy's use of a consumer report or "background check" to determine him eligibility for employment.

11. Mr. Watkins has no prior criminal convictions.

12. Select Remedy requested a background check provided by Ferret Background Check concerning Mr. Watkins.

13. Ferret Background Check prepared a background check report concerning Mr. Watkins.

14. That background check constituted a "consumer report" for purposes of the FCRA.

15. That background check included public records information about several criminal matters which Ferret Background Check attributed to Mr. Watkins.

16. In reality, that public information did not relate to Mr. Watkins and Ferret Background Check falsely attributed that information to Mr. Watkins.

17. Ferret Background Check did not provide a copy of this report to Mr. Watkins or otherwise notify him that it intended to issue a report containing public record information before it provided the false report to Select Remedy, in violation of 15 U.S.C. § 1681k.

18. Ferret Background Check did not maintain strict procedures designed to insure that the public record information in that report was complete and up to date, in violation of 15 U.S.C. § 1681k.

19. Ferret Background Check did not follow reasonable procedures to insure the

maximum possible accuracy of that report, in violation of 15 U.S.C. § 1681e.

20. Select Remedy concluded from a review of that consumer report that Mr. Watkins had been convicted of crimes which disqualified him from employment.

21. Based in part upon the convictions reflected in that consumer report, Select Remedy rejected Mr. Watkin's request for employment.

22. Mr. Watkins's has suffered damages as a result of these events, as he was not hired for the job, lost wages, and thus suffered an injury.

## **Practices and Policies of Ferret Background Check**

23. Ferret Background Check regularly provides background checks concerning employment candidates to employers.

24. Those background checks constitute consumer reports for purposes of the FCRA.

25. Ferret Background Check has implemented uniform policies, practices, and practices used in preparing and delivering these background checks.

26. Those procedures, policies, and practices dictate the means by through which reports will be assembled, and the means by which they are delivered to persons outside its own organization.

27. Those polices, procedures, and practices do not include any provision for delivering copies of those background checks or otherwise notifying the subjects of those background checks before delivering then to the person requesting those reports.

28. Ferret Background Check fails to requests sufficient information to correctly match public record data to the subject of its investigations, resulting in the preparation of erroneous credit reports concerning the subjects of its background checks.

29. Ferret Background Check fails to properly use all information provided to it, for the purpose of matching public record data to the subject of its investigations, resulting in the preparation of erroneous credit reports concerning the subjects of its background checks.

30. Ferret Background Check claims to prepare consumer reports containing public

record data using only an exact match of the name and date of birth. This process is does not utilize sufficient data points to insure the maximum possible accuracy of the reports issued by Ferret Background Check.

31. Ferret Background Check actually prepares consumer reports containing public record data using only partial matches of the name and date of birth. This process is insufficient to insure the maximum possible accuracy of the reports issued by Ferret Background Check.

### Class Allegations as to Ferret Background Check

32. Ferret Background Check failed to provide Mr. Watkins and the class members with notice that it was issuing consumer reports containing public record information concerning them when required under the FCRA.

33. Ferret Background Check has failed to follow reasonable procedures to insure the maximum possible accuracy of the reports which it issues.

34. Select Remedy has engaged in this conduct in relation to a large number of persons; consequently the prospective classes meet the "numerosity" requirements of a class action under Rule 23.

35. This action is brought as a class action on behalf the following classes of individuals

   a. ***The Pre-Report Delivery Class*** – This class arises under 15 U.S.C. § 1681k and consists of
      i. All natural persons residing in the United States or its territories
      ii. Who were the subject of a background check prepared by Ferret Background Check
      iii. Who Ferret Background Check failed to notify of the fact that it would issue such a report containing public record information at the time that it issued the report.

   b. ***The Reasonable Procedures Class*** – This class arises under 15 U.S.C. § 1681b(b)(3)(A)(I) and consists of,
      i. All natural persons residing in the United States or its territories,
      ii. Who were the subject of a background check prepared by Ferret Background Check
      iii. Which report contains information which on its face concerns a person with a different name of record than that of the subject of the report.

36. Class counsel will likely obtain the names and addresses of the putative Class

members through documents maintained by Ferret Background Check; consequently the parties and the Court can identify the prospective class members.

37. Mr. Watkins asserts claims under the same legal and remedial theories as those as those of the prospective class members; consequently, this case meets the "typicality" requirements of a class action under Rule 23.

38. Mr. Watkins's case presents a number of issues common to those of the class members:

   a. Whether Ferret Background Check provides consumers with notice of public record information which it intends to publish at the time it issues those reports to the requesting party.

   b. Whether Ferret Background Check follows uses reasonable procedures to insure the maximum possible accuracy of its reports.

   c. Whether Ferret Background Check uses uniform policies procedures and practices to comply with the provisions of 15 U.S.C. § 1681e and § 1681k.

   d. Whether Select Remedy's conduct constituted violations of the FCRA

   e. Whether Select Remedy knowingly and intentionally committed an act in conscious disregard of the rights of the consumer.

39. These common issues law and fact predominate over any questions affecting an individual member; consequently this case meets the "commonality" and "predominance" requirements for class actions under Rule 23.

40. Mr. Watkins will fairly and adequately represent the interests of the putative class.

41. Because he has asserted the same types of claims as those of the class members, Mr. Watkins's interests coincide with those of the prospective class members who he seeks to represent.

42. Mr. Watkins has retained competent and experienced counsel in such litigation; consequently, Mr. Watkins is an "adequate" class representative under Rule 23.

43. The damages suffered by each prospective class member are such that individual

prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Ferret Background Check's conduct.

44. The prospective class members would find it virtually impossible to individually to effectively redress the wrongs done to them:

a. Consumer reporting cases involving employment reports rarely present large damages which would ordinarily attract competent counsels.

b. The cost of litigating fair credit cases within the federal court system would deter many Plaintiff's attorneys from assuming the representation of the prospective class members in an individual case in light of the small potential recovery.

c. Few attorneys are qualified to identify, let alone litigate, consumer reporting cases involving access and use of consumer reports for employment purposes.

d. While cases like these do present the possibility of statutory fee awards, those fee awards only arise in the event of a successful "actual damage" suit or a finding of wilfulness. These heightened burdens of proof for successful recoveries frequently impair the ability of consumer's to find representation for consumer reporting cases.

e. Even if the members of the putative classes could afford such individual litigation, and find competent counsel, the number of suits which would be necessary to remedy the wrongs in this case would represent an unnecessary burden on the Court.

f. Individualized litigation by these class members would also presents the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system.

45. The Class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a single case.

46. The class action mechanism a class action is "superior" to other available methods for fair and efficient adjudication of the controversy under Rule 23.

**COUNT I – Class Claim Under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*.**

47. Mr. Watkins incorporates the preceding allegations by reference.

48. Ferret Background Check violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to insure the maximum possible accuracy of the reports it issues.

49. Ferret Background Check violated 15 U.S.C. § 1681k by failing to notify Mr. Watkins and the class members of the adverse public record information contained within the background check at the time it publishes that information to the requesting party.

50. Ferret Background Check has violated the FCRA negligently 15 U.S.C. § 1681o or willfully, 15 U.S.C. § 1681n.

51. Mr. Watkins suffered damages as a result of this violation of the FCRA.

**Jury Demand**

52. Mr. Watkins demands trial by jury.

**Request For Relief**

53. For the reasons set forth above, Mr. Watkins requests that the Court Grant the following relief:

   a. Actual damages for items including lost wages, lost employment opportunity, emotional distress, mental aguish, frustration, humiliation, and embarrassment for Mr. Watkins.

   b. Statutory damages for plaintiff and the class in an amount to be determined at trial.

   c. Punitive damages for plaintiff and the class in an amount to be determined at trial.

   d. Costs and attorney fees provided by statute.

   e. Any other relief the Court deems just.

//
//
//
//

Respectfully Submitted,

Dated: September 21, 2011

 s/ Keith J. Keogh
Keith J. Keogh
Craig M. Shapiro
KEOGH LAW, LTD
101 North Wacker Drive, Suite 605
Chicago, IL 60606
PHONE: (312) 726-1092; FAX: (312) 726-1093

Ian B. Lyngklip P47173
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864

Attorneys for Plaintiff Paul Watkins

## **JURY DEMAND**

Plaintiff demands trial by jury.

/s/ Keith J. Keogh